NATHANIEL A. WEISBROT (NW6029)
LAW OFFICE OF N. ARI WEISBROT LLC
1099 Allessandrini Avenue
New Milford, New Jersey 07646
(201) 788.6146
aweisbrot@weisbrotlaw.com
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAUL STEPNER and DANIEL CHESNER, <br><br> Plaintiffs, <br><br> vs. <br><br> SETH LEVINE; 219 HILLSIDE VENTURES, LLC; CLIFTON 126 CENTER LLC; BERGENFIELD VENTURES LLC; and AMBOY SL PARTNERS LLC, <br><br> Defendants. | CIVIL ACTION NO:  2020-cv- <br><br><br> **COMPLAINT** |

Plaintiffs Saul Stepner and Daniel Chesner, (collectively, "Plaintiffs"), by way of Complaint against Defendants Seth Levine; 219 Hillside Ventures, LLC; Clifton 12 Center LLC, Bergenfield Ventures, LLC, and Amboy SL Partners, LLC (collectively, "Defendants") allege and say as follows:

### NATURE OF ACTION

1. Plaintiffs bring this Complaint to recover damages incurred as a result of the Defendants' complicated and extensive scheme through which they solicited and received from the Plaintiffs hundreds of thousands of dollars, in the form of investments and loans related to the acquisition of real estate properties. The Plaintiffs made these investments based upon certain representations and warranties by Defendant Levine. Those representations and warranties have

1

proven false and Plaintiffs' funds have been improperly misappropriated, diverted, and converted for Defendants' own gain leaving Plaintiffs out more than $525,000 without any assurances that their interests in the properties, in fact, exist.

2. The real properties at issue in this action (the "Properties"), include:

    a) 219 Hillside, Hillside, New Jersey
    b) 126 Center Street, Clifton, New Jersey
    c) 71-73 West Main Street Bergenfield, New Jersey
    d) 627 Raritan Avenue, Perth Amboy, New Jersey
    e) 634 Carlock Avenue, Perth Amboy, New Jersey
    f) 640 Carlock Avenue, Perth Amboy, New Jersey, and
    g) 644 Colgate Avenue, Perth Amboy, New Jersey

3. Plaintiffs now bring this action alleging fraud, RICO violations, breach of fiduciary duty, breach of contract, conversion, and unjust enrichment, and seek, among other things, the recovery of actual, compensatory, consequential, punitive and treble damages, and an accounting of their investments.

**PARTIES**

4. Plaintiff Saul Stepner ("Stepner") is an individual with a place of residence located at 527 Grenville Avenue Teaneck, New Jersey 07666.

5. Plaintiff Daniel Chesner ("Chesner") is an individual with a place of residence located at 1320 Hastings Street, Teaneck New Jersey 07666.

6. Upon information and belief, Defendant Seth Levine ("Levine") is an individual with a place of residence located at 636 South Forest Drive, Teaneck, New Jersey 07646

7. Upon Information and belief, Defendant 219 Hillside Ventures, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

8. Upon Information and belief, Clifton 126 Center LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

9. Upon Information and belief, Bergenfield Ventures LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

10. Upon Information and belief, Amboy SL Partners, LLC is a New Jersey Limited Liability Company, with a principal place of business located at 210 River Street, Hackensack, New Jersey 07601.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and, with respect to certain claims, 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over the Defendants insofar as they reside in and/or conduct business in this State and in this district, and all of the Properties are located in New Jersey. Moreover, all of the transactions occurred in this district and the causes of action arose herein.

13. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(l) and (2) because all Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

## THE INVESTMENTS

**219 HILLSIDE, HILLSIDE, NJ**

14. In or about March 2016, Defendant Levine solicited Stepner to invest in real property located at 219 Hillside, Hillside, New Jersey. Levine caused to be formed an entity known as "219 Hillside Ventures, LLC" for the purposes of acquiring and managing the property.

3

15. Stepner invested $143,000 (for a 26% interest), Defendant Levine claimed to have invested $407,000 (for a 74% interest).

16. The 219 Hillside transaction was fully funded and closed in approximately March 2016.

17. Levine prepared and circulated an Operating Agreement for the LLC, which was duly executed by its members.

18. Through the end of 2017, Stepner received distributions in the amount of $85,540. Thereafter, Stepner receive no income, distributions or payments from the Defendants or the LLC.

**71-73 WEST MAIN STREET BERGENFIELD, NJ**

19. In or about April 2016, Defendant Levine solicited Stepner to invest in real property located at 71-73 West Main Street, Bergenfield, New Jersey. Levine caused to be formed an entity known as "Bergenfield Ventures LLC" for the purposes of acquiring and managing the property.

20. Stepner invested $54,000 (for a 10% interest), Defendant Levine claimed to have invested $240,000 (for an 85% interest) and represented that a third member invested $30,000 (for a 10% interest).

21. The 126 Center Street transaction closed in or about August 2016.

22. Levine prepared and circulated an Operating Agreement for the LLC, which was duly executed by its members.

23. Through the end of 2017, Stepner received distributions in the amount of $37,200. Thereafter, Stepner receive no income, distributions or payments from the Defendants or the LLC. Levine represented to Stepner that he had retained his 10% interest in the Property.

**126 CENTER STREET, CLIFTON, NJ**

24. In or about November 2018, Defendant Levine solicited Stepner to invest in real

property located at 126 Center Street, Clifton, New Jersey. Levine caused to be formed an entity known as "Clifton 126 Center Street LLC" for the purposes of acquiring and managing the property.

25. Stepner invested $101,500 (for a 10% interest), Defendant Levine claimed to have invested $858,500 (for an 85% interest) and represented that a third member had invested $50,500 (for a 5% interest).

26. The 126 Center Street transaction closed in or about February 2019.

27. Levine prepared and circulated an Operating Agreement for the LLC, which was duly executed by its members.

### 627 RARITAN AVE, 634 CARLOCK AVE, 640 CARLOCK AVE, AND 644 COLGATE AVE, PERTH AMBOY, NJ

28. In or about April 2019, Defendant Levine solicited Plaintiff Chesner to invest in real properties located at 627 Raritan Ave, 634 Carlock Ave, 640 Carlock Ave, and 644 Colgate Ave, Perth Amboy, New Jersey (collectively, the "Perth Amboy Properties.")

29. Levine caused to be formed an entity known as "Amboy SL Partners, LLC" for the purposes of acquiring and managing the Perth Amboy Properties.

30. Chesner invested $334,000 (for a 20% interest in the Perth Amboy Properties). Defendant Levine claimed to have invested $835,000 (for a 50% interest). Defendant Levine claimed SL Ventures, LLC - - owned by Levine's brother - - invested $501,000 (for a 30% interest).

31. The transactions never closed. The Defendant claimed verbally that the he had closed on the Perth Amboy Properties.

32. Amazingly, despite paying over $334,000 to Levine for the purposes of investing

in the Perth Amboy Properties, it appears that Levine simply took the money and never invested or never acknowledged Chesner's interests.

33. In total, the Plaintiffs invested at least $525,000 in the Defendants' real estate acquisitions.

## **DEFENDANTS' MISCONDUCT**

34. Plaintiffs have learned from other pleadings filed in related cases that (i) on or about August 16, 2019, a search warrant for offices operated by Levine and companies with which he is affiliated, including the property manager for the Properties was executed by agents of the Federal Bureau of Investigation (the "FBI"), and (ii) the search warrant was connected to a federal investigation of Levine and his companies.

35. Plaintiffs learned from other pleadings filed in related cases that, as of approximately August 22, 2019, Levine and his affiliated companies are no longer actively conducting business. Accordingly, each Defendant has abandoned its subject Property and has forsaken its obligation to manage such Property.

36. Upon information and belief, and based upon information learned from pleadings in other cases, the Defendants do not have sufficient funds to make insurance payments, or are refusing to do so.

37. Upon information and belief, and based upon several actions pending in this and other Courts, several loans relating to the Properties (and other properties purportedly owned by the Defendants) are in default and the subject of foreclosure proceedings.

38. Plaintiffs are unable to obtain any information about the Properties or their investments.

39. Upon information and belief, and based upon several actions pending in this and

other Courts, as of August 22, 2019, Levine and the Defendants are no longer conducting business and the LLC defendants have abandoned the Properties and their management obligations.

40. The actions by the Defendants, as set forth herein, constitute significant and material breaches of the Operating Agreements and/or the Parties' Agreements, which have caused, and will continue to cause, significant and irreparable damage to the Plaintiffs.

41. During the last several years, Plaintiffs have not received their distributions, income or payments, as required by the operating agreements and/or the parties' Agreements, and the other promises and understanding between the parties. In effect, it seems that Levine has simply converted those distributions for his own use, or to repay other investors.

42. Moreover, certain 2018 Form K-1s were issued by Levine that were clearly erroneous. 2018 K-1s included distributions that were not issued in 2018. Some distribution checks, disclosed on the K-1s, could not be cashed due to insufficient funds. Yet, the K-1s continued to falsely represent that distributions were made. Those distributions remain due and owing.

43. While some "payments" were, in fact, paid to and received by Plaintiffs on occasion (and those amounts will be deducted from Plaintiff's ultimate award of damages), it is simply impossible to know the manner in which revenue, distributions, or proceeds were allocated or distributed by the Defendants.

44. With respect to several investments, Levine purported to finance or refinance the properties but failed to distribute the proceeds to investors. Those funds are unaccounted for.

## FIRST COUNT
### (Civil RICO -18 U.S.C. 1962 (c))

45. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

46. Defendants violated 18 U.S.C. §§ 1962(a) and 1962(d) by (i) receiving income from a pattern of racketeering, (ii) using such income to acquire and/or operate an interest in an enterprise, (iii) where such enterprise affects interstate and foreign commerce.

47. As described above, the Defendants engaged in two or more predicate acts within ten years which constitute the Defendants' pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(a) and 1962(d). The scheme to fraudulently obtain and convert funds from Plaintiffs was perpetrated through wire fraud violations under 18 U.S.C. § 1343, mail fraud violations under 18 U.S.C. § 1341, and bank fraud violations under 18 U.S.C. 1344.

48. Specifically, as set forth above in detail, each Defendant sent, through the U.S. Mail and by interstate wire, solicitations for the investments, checks that were known to have insufficient funds and would be rejected, and false information regarding the properties.

49. Defendant Levine was the mastermind of the schemes set forth above and effectuated their activities by conspiring with the LLC Defendants to drain funds from Plaintiffs. Levine structured transactions in which over $525,000 were taken from Plaintiffs and transferred into the entities which owned the Properties as well as other assets, entities owned and controlled by Defendants. Levine also directed the wrongful activities of the other Defendants.

50. Defendants' various real estate investment companies comprise an enterprise under the federal RICO statutes.

51. Thus, Defendants invested and used income and proceeds generated from a pattern of racketeering activity in the operation of an enterprise in violation of 18 U.S.C. §§ 1962(d).

52. Plaintiffs were directly injured by Defendants' violations of the federal RICO statute and the predicate acts. Specifically, Plaintiffs were injured directly by Defendants' fraudulent inducement to invest and loan moneys that were used to fund Defendants' real estate

investment enterprise.

53. As a result of those injuries, Plaintiffs have sustained damages.

## SECOND COUNT
### (Conspiracy to Violate Civil RICO-18 U.S.C. 1962 (d))

54. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

55. In violation of 18 U.S.C. § 1962(d), the Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above.

56. The conspiracy commenced at least as early as 2012 and is ongoing.

57. The conspiracy's purpose was to divert money from Plaintiffs to their own benefit by using mail and wire to solicit multiple "investments" in property that either was not lawfully owned by the Defendants or which was sold by the Defendants to multiple parties.

58. Each Defendant committed at least one overt act in furtherance of such conspiracy. These acts in furtherance of the conspiracy included misleading Plaintiffs as to the value of the investment properties, the ability to flip them or obtain financing, and the terms and condition of purchase, all of which were reinforced and defended by Levine in separate conversations with Plaintiffs. All defendants received monies from the funds invested by Plaintiffs, all the while making it seem as though the funds were legitimately being used to finance the purchase and development of the Properties.

59. Even if some of the Defendants did not agree to harm Plaintiffs specifically, the purpose of the acts they engaged in was to advance the overall object of the conspiracy, and the harm to Plaintiffs was a reasonably foreseeable consequence of Defendants' actions.

60. Plaintiffs have been injured and continue to be injured in their business and property by Defendants' conspiracy in violation of 18 U.S.C. $ 1962(d). The unlawful actions of Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiffs in their business or property. Plaintiffs seek an award of damages in compensation for. among other things, the hundreds of thousands of dollars that Defendants stole from Plaintiffs. Plaintiffs further seeks an award of three times the damages they sustained, and the recovery of reasonable attorney's fees and costs of investigation and litigation, as well as any other relief as authorized.

## THIRD COUNT
### (Equitable Accounting)

61. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

62. The oral and written contracts between Plaintiffs and Defendants involve extensive and complicated accounts and transactions.

63. Each Operating Agreement for each investment includes the following provision:

> Maintenance of Books. The Company shall keep books and records of accounts, shall keep minutes of the proceedings of its Members, and shall keep such other books and records as provided by the Act and as the Company may deem necessary or advisable. Such books and records shall be subject to the inspection of any Member.

64. Plaintiffs have made various requests for information regarding the Defendants' activities with regard to these transactions, all of which have been refused.

65. To date, Defendants have refused or have been unable to account for any of Plaintiffs' loans and/or investments and have refused to demonstrate how the money was used.

66. There is no remedy at law that would resolve this issue as fully, adequately or

expeditiously as an accounting.

## FOURTH COUNT
### (Fraud)

67. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

68. As set forth in detail above, and incorporated into this Count by reference, Defendants made fraudulent misrepresentations and/or omissions of material fact.

69. Defendants knew or should have known that their statements were false when made.

70. Defendants intended to deceive Plaintiffs with the misrepresentations and omissions and induce Plaintiffs to act to their detriment by continuing to invest substantial funds with Defendants and to loan money to Defendants and to forebear on their rights upon disclosure of the substantial fraud committed by Defendants.

71. Plaintiffs had no knowledge of the falsity of the Defendants' representations and omissions and reasonably relied on the Defendants' misrepresentations to their detriment.

72. As a result of Defendants' fraud and misrepresentation, Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH COUNT
### (Breach of Fiduciary Duty Against Levine)

73. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

74. During the course of their business dealings, Plaintiffs reposed confidence in Levine to guide and inform them with respect to real estate projects and Levine accepted this trust. Levine also owed a fiduciary duty to Plaintiffs as a managing member of the investment LLC, as

described above.

75. As a result, Defendant Levine and Plaintiffs had an implied fiduciary relationship pursuant to which Levine owed Plaintiffs a fiduciary duty.

76. Pursuant to that fiduciary duty, Levine also had a duty of loyalty, and was required to refrain from self-dealing and from taking unfair advantage. He was also required to disclose all material facts and act in Plaintiffs' best interest.

77. Instead, Levine exploited Plaintiffs' trust by defrauding them and the other Plaintiffs.

78. Accordingly, Levine breached his fiduciary duty causing the Plaintiffs to suffer damages.

## SIXTH COUNT
### (Conversion)

79. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

80. Defendants received Plaintiffs' funds based on false statements.

81. The funds were earmarked to fund the purchase of specific properties. In addition, Defendants wrongfully exercised dominion and control over the funds.

82. Despite repeated requests, Defendants have refused to return the funds and have improperly converted them for their own use causing damage to Plaintiffs.

## SEVENTH COUNT
### (Unjust Enrichment)

83. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

84. Plaintiffs transferred at least $525,000 to Defendants and thus conferred a benefit

upon them.

85. The Defendants voluntarily requested and received all such funds under false pretenses and improperly exercised dominion and control over those funds.

86. Under the circumstances, it would be inequitable for Defendants to continue to retain Plaintiffs' funds and the properties or assets acquired therewith.

## EIGHTH COUNT
### (Breach of Contract)

87. Plaintiffs repeat and re-allege the foregoing allegations as if more fully set forth at length herein.

88. The Operating Agreements are enforceable contracts between Plaintiffs and Defendants. The oral promises and representations by Levine are also enforceable and valid contracts between the parties.

89. The Operating Agreements require the Defendants to maintain and manage the Properties, and to protect Plaintiffs' investments.

90. Each Operating Agreement for each investment includes the following provision:

> Liability for Certain Acts. The Manager shall perform his managerial duties in good faith, in a manner he reasonably believes to be in the best interests of the Company, and with such care as an ordinarily prudent person in a like position would use under similar circumstances.

91. Each Operating Agreement makes Levine liable for any and all damages that are the result of fraud, deceit, gross negligence, willful misconduct, breach of fiduciary duty, or a wrongful taking by Levine.

92. The Defendants have abandoned the Properties, failed to maintain or manage the Properties, allowed the Properties to default on their loans and mortgages, obtained improper and

unauthorized financing and loans secured by the Properties but diverted and converted the loan proceeds for themselves, to the exclusion of Plaintiffs' rights and interests.

93. Moreover, the Defendants have ceased conducting its property management duties as to the Properties.

94. Moreover, Defendants have ceased making the required distributions to the Plaintiffs and appear to have converted those funds.

95. These actions constitute material and significant breaches by the Defendants of the Operating Agreements.

96. In addition, Levine promised and agreed with Chesner that Levine would invest Chesner's funds in the Perth Amboy Properties. Chesner abided by the Agreement by depositing the funds with Levine. Levine, however, breached the Agreement by failing to invest in the Properties and failing to return or account for Chesner's funds.

97. The material breaches of Contract by the Defendants have caused and shall continue to cause, substantial and irreparable damage to the Plaintiffs and their investments, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that this Court issue the following relief with respect to the Defendants:

  a. Declare that the Operating Agreements have been breached;
  b. An award of compensatory damages, punitive damages and attorney's fees and costs; and
  c. Such additional and further relief as the Court may deem just and equitable.

                                                  **LAW OFFICE OF N. ARI WEISBROT LLC**

                                                  By:  _____
                                                           N. Ari Weisbrot, Esq.

                                                  1099 Allessandrini Avenue
                                                 New Milford, New Jersey 07646
                                                 (201) 788.6146
                                                 aweisbrot@weisbrotlaw.com
                                                 *Attorneys for Plaintiffs*

Dated: January 8, 2020