UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SAUL STEPNER, et al.,

    *Plaintiffs,*

    v.

SETH LEVINE, et al.,

    *Defendants.*

Civil Action No. 20-312

ORDER

**THIS MATTER** comes before the Court by way of Plaintiffs Saul Stepner's ("Stepner") and Daniel Chesner's ("Chesner" and together with Stepner, "Plaintiffs") unopposed Motion for the Entry of Default Judgment,[1] ECF No. 15, against Defendants Seth Levine ("Levine"), 219 Hillside Ventures LLC ("Hillside LLC"), Clifton 126 Center LLC ("Clifton LLC"), Bergenfield Ventures LLC ("Bergenfield LLC"), and Amboy SL Partners LLC ("Amboy LLC" and together with Levine, Hillside LLC, Clifton LLC, and Bergenfield LLC, "Defendants");

and it appearing that this action arises out of an alleged scheme to defraud real estate investors perpetrated by Defendants, see generally Compl., ECF No. 1;

and it appearing that Levine solicited Plaintiffs to invest in real property through a series of LLCs formed by Levine (the "Defendant LLCs"), id. ¶¶ 14, 19, 24, 28;

and it appearing that Levine served as the managing member of each Defendant LLC, id. ¶ 74;

and it appearing that Stepner invested (1) $143,000 in Hillside LLC, which purchased property in Hillside, NJ in March 2016, id. ¶¶ 14-16; (2) $54,000 in Bergenfield LLC, which

---

[1] In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005).

purchased property in Bergenfield, NJ in August 2016, id. ¶¶ 19-21; and (3) $101,500 in Clifton LLC, which purchased property in Clifton, NJ in February 2019, id. ¶¶ 24-26;

and it appearing that Hillside LLC, Bergenfield LLC, and Clifton LLC were each governed by an operating agreement prepared by Levine (the "Operating Agreements"), id. ¶¶ 17, 22, 27, all of which provided, inter alia, that (a) Defendants were required to maintain and manage the subject properties (the "Properties"), id. ¶ 89; and (b) Plaintiffs were to receive certain distributions from each LLC, id. ¶ 41;

and it appearing that through the end of 2017, Stepner had received $85,540 in distributions from Hillside LLC and $37,200 in distributions from Bergenfield LLC, id. ¶¶ 18, 23;

and it appearing that Chesner invested $334,000 in Amboy LLC, and Levine agreed to use Chesner's investment to acquire real property in Perth Amboy, NJ, id. ¶¶ 28-30, 96;[2]

and it appearing that while Levine verbally stated that Amboy LLC had completed transactions to purchase property in Perth Amboy, the subject transactions never closed, id. ¶ 31;

and it appearing that Levine allegedly "simply took the money and never invested or never acknowledged Chesner's interests," id. ¶ 32;

and it appearing that Plaintiffs have received no other distributions from the Defendant LLCs, id. ¶¶ 18, 23, 41;

and it appearing that as of August 22, 2019, Defendants have abandoned their obligation to manage the Properties, have ceased making insurance payments related to the Properties, and have defaulted on several loans related to the Properties, id. ¶¶ 35-39;

and it appearing that on September 17, 2020, Plaintiffs filed the eight-count Complaint alleging (1) violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C.

---

[2] The Complaint does not allege that Levine prepared an Operating Agreement for Amboy LLC.

§ 1962 ("RICO"), id. ¶¶ 45-53 ("Count I"); (2) conspiracy to violate RICO, id. ¶¶ 54-60 ("Count II"); (3) equitable accounting, id. ¶¶ 61-66 ("Count III"); (4) fraud, id. ¶¶ 67-72 ("Count IV"); (5) breach of fiduciary duty, id. ¶¶ 73-78 ("Count V"); (6) conversion, id. ¶¶ 79-82 ("Count VI"); (7) unjust enrichment, id. ¶¶ 83-86 ("Count VII"); and (8) breach of contract, id. ¶¶ 87-97 ("Count VIII");

and it appearing that as of the date of this Order, Defendants have failed to answer or otherwise respond to the Complaint;

and it appearing that on March 4, 2020, the Clerk of Court entered default against Defendants;

and it appearing that Plaintiffs now move for default judgment on Counts IV (fraud), V (breach of fiduciary duty), VI (conversion), and VIII (breach of contract), Pl. Mem. at 2, ECF No. 15.1;

and it appearing that, before entering a default judgment, the Court must determine whether it has jurisdiction over the action and the parties, see Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 848 (D.N.J. 2008), and whether Plaintiffs properly served Defendants, see E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC, 19 F. Supp. 3d 560, 567 (D.N.J. 2014);

and it appearing that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the Complaint alleges violations of RICO;

and it appearing that the Court has personal jurisdiction over Defendants because all Defendants are domiciled, organized, or have their principal place of business in New Jersey, Compl. ¶¶ 6-10; see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011);

and it appearing that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1);

and it appearing that Defendants have acknowledged service of the Summons and Complaint, see ECF No. 4;

and it appearing that before entering a default judgment, a court must also determine whether the plaintiff's complaint sufficiently pleads a cause of action and whether the plaintiff has proved damages, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536, 538 (D.N.J. 2008);

and it appearing that Count IV alleges that Defendants defrauded Plaintiffs by inducing them to make investments in reliance on material "misrepresentations and/or omissions," Compl. ¶¶ 68-72;

and it appearing that "[t]he elements of common-law fraud are (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages," Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (citation and quotation marks omitted);[3]

and it appearing that while Plaintiffs do not clearly indicate which misrepresentations or omissions form the basis of their fraud claim, the Complaint alleges that Defendants defrauded Plaintiffs by (a) failing to make distributions, as promised in the Operating Agreements, Compl. ¶ 41; and (b) failing to invest Chesner's funds into real property, as required by the agreement between Chesner and Levine, id. ¶¶ 32, 96;

and it appearing that New Jersey's economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract," Bracco

---

[3] Federal Rule of Civil of Procedure 9(b) requires fraud claims to be pled with particularity. A plaintiff must specify "the date, place or time of the fraud," "who made a misrepresentation to whom," and "the general content of the misrepresentation," Holst v. Oxman, 290 F. App'x 508, 510 (3d Cir. 2008) (citation and quotation marks omitted).

Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (citing Duquesne Light Co. v. Westinghouse Elec. Co., 66 F.3d 604, 618 (3d Cir. 1995)); see also id. at 546 (explaining that the "critical issue" in determining whether a tort claim may proceed alongside a contract claim is "whether the allegedly tortious conduct is extraneous to the contract");

and it appearing that the economic loss doctrine bars Count IV because Plaintiffs' fraud claim arises solely from Levine's alleged failure to honor his contractual promises to make distributions and invest Chesner's funds, see, e.g., id. at 564 (holding that the economic loss doctrine prohibits fraud claims based on the breach of a contractual promise or fraud in the performance of a contract);[4]

and it appearing that Count V alleges that Levine, as managing member of the Defendant LLCs, breached his fiduciary duty of loyalty to Plaintiffs, Compl. ¶¶ 74-78;

and it appearing that "the elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship between the parties; (2) the breach of the duty imposed by that relationship; and (3) damages or harm to the plaintiff caused by said breach," SalandStacy Corp. v. Freeney, No. 11-3439, 2012 WL 959473, at *12 (D.N.J. Mar. 21, 2012) (citing McKelvey v. Pierce, 173 N.J. 26 (2002));

and it appearing that "managing members of an LLC owe the traditional fiduciary duties of loyalty and care to non-managing members of that LLC," In re D'Amore, 472 B.R. 679, 689 (Bankr. D.N.J. 2012) (citation omitted);

---

[4] The Complaint fails to specifically plead any other actionable misrepresentations. For example, while Plaintiffs allege that Levine "claimed" that he and certain third parties invested in the Defendant LLCs, Compl. ¶¶ 15, 20, 25, Plaintiffs do not allege that these claims were false or that they induced Plaintiffs to invest. Moreover, to the extent Plaintiffs seek to assert a fraud claim based on representations in the Operating Agreements related to the management of the LLCs, such claims are similarly barred by the economic loss doctrine.

5

and it appearing that "the duty of loyalty requires that the best interests of the [LLC and its members] take precedence over any self-interest of a [managing member] that is not shared by the [members] generally," id. at 690;

and it appearing that Levine allegedly breached his duty of loyalty by diverting funds meant for distribution to Plaintiffs "for his own use, or to repay other investors" and by misappropriating funds invested by Chesner, resulting in damages to Plaintiffs, id. ¶¶ 32, 41, 78;

and it appearing that Count V therefore sufficiently alleges a claim for breach of fiduciary duty by each Plaintiff against Levine;

and it appearing that Count VI alleges that Defendants converted funds received from Plaintiffs and the funds were "earmarked to fund the purchase of specific properties," Compl. ¶¶ 80-81;[5]

and it appearing that "common law conversion consists of the following elements: (1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant," Austar Int'l Ltd. v. AustarPharma LLC, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (citation and quotation marks omitted);

and it appearing that the Complaint alleges that (1) Chesner deposited $334,000 pursuant to Levine's agreement to invest the funds in real estate properties, id. ¶ 96; (2) instead of investing Chesner's payment and providing Chesner with an interest in the subject properties, Levine took

---

[5] Count VI does not assert a claim for conversion related to Defendants' failure to pay distributions. See Compl. ¶¶ 79-82.

6

the funds for himself, id. ¶ 32, and (3) Levine refused to return the funds despite repeated requests from Chesner, id. ¶ 82;[6]

and it appearing that drawing all inferences in favor of Plaintiffs, Count VI adequately pleads a conversion claim by Chesner against Levine, see, e.g., E. Concrete Materials, Inc. v. Jamer Materials Ltd., No. 19-9032, 2019 WL 6734511, at *8 (D.N.J. Oct. 25, 2019), report and recommendation adopted, 2019 WL 6726476 (D.N.J. Dec. 10, 2019) (holding that plaintiff adequately pled conversion claim where (1) plaintiff paid defendant for the purchase of property, and was therefore entitled to that property; and (2) defendant sold the property to a third party without plaintiff's knowledge, thereby, "exerting ownership rights over plaintiff's property and interfering with plaintiff's right of possession");[7]

and it appearing that Count VIII alleges that Defendants breached the Operating Agreements by failing to manage the subject properties or pay distributions to Plaintiffs, Compl. ¶¶ 88-95;

and it appearing that to state a claim for breach of contract, a plaintiff must allege (1) "a valid contract between the parties," (2) "the opposing party's failure to perform a defined obligation under the contract," and (3) "the breach caused the claimant to sustained damages,"

---

[6] The Complaint appears to allege that the funds invested by Stepner were, in fact, used to purchase real property. See Compl. ¶¶ 16, 21, 26 (alleging that each real estate transaction successfully closed). Count VI therefore fails to allege a conversion claim by Stepner.

[7] Unlike Plaintiffs' fraud claim, which flows solely from the breach of contractual promises, the Court is satisfied that Levine's alleged misappropriation breached independent tort duties to act in the best interests of Plaintiffs and to refrain from interfering with their right to possession of property. See, e.g., Hughes v. TD Bank, N.A., 856 F. Supp. 2d 673 (D.N.J. 2012) (permitting conversion claim to proceed where bank misappropriated funds to which plaintiff was entitled "in ways not contemplated by the [parties'] contract"); E. Concrete Materials, Inc., 2019 WL 6734511, at *8 (holding that plaintiff stated independent conversion claim by alleging that defendant sold a third party materials that it was contractually obligated to provide to plaintiff and retained the proceeds). In other words, Levine not only failed to direct funds in accordance with the parties' contracts; by misappropriating the funds he ensured that they could not be used for their proper purpose.

EnviroFinance Grp., LLC v. Env't Barrier Co., LLC, 440 N.J. Super. 325, 345 (App. Div. 2015) (citation omitted);

and it appearing that Plaintiffs allege that (1) the Operating Agreements were valid contracts between Stepner and Levine, Compl. ¶ 88;[8] (2) the Operating Agreements required Levine, as managing member of each LLC, to (a) maintain and manage the Properties, id. ¶¶ 89-90, and (b) make undisclosed distributions to Stepner, id. ¶ 41; and (3) Levine breached the Operating Agreements and caused damage to Stepner by failing to manage the Properties or make distributions, id. ¶¶ 18, 23, 35-39, 41, 92-94;

and it appearing that Plaintiffs further allege that Chesner contracted for Levine to purchase real property in Perth Amboy, and that Levine breached that contract by receiving Chesner's funds but failing to complete the purchases, id. ¶¶ 31-32, 96;

and it appearing that Count VIII therefore sufficient pleads a claim for breach of the Operating Agreements and Levine's contract with Chesner;[9]

and it appearing that Plaintiffs seek default judgment in the amount of $525,000, plus post-judgment interest and court costs, see Proposed Order, ECF No. 15.4;[10]

and it appearing that Plaintiffs have submitted a declaration by Chesner in support of the Motion, see ECF No. 12.1 ("Chesner Decl.");[11]

---

[8] The Complaint does not adequately allege that the Defendant LLCs were parties to the Operating Agreements. Plaintiffs' well-pled allegations indicate only that for each LLC, "Levine prepared and circulated an Operating Agreement . . . which was duly executed by its members," i.e., Levine and Stepner. See Compl. ¶¶ 17, 22, 27.

[9] For clarity, the Court has determined that the following claims have been sufficiently pled: (1) Count V (breach of fiduciary duty), by each Plaintiff against Levine; (2) Count VI (conversion), by Chesner against Levine; and (3) Count VIII (breach of contract), by each Plaintiff against Levine.

[10] Plaintiffs' brief in support of the Motion seeks a "total judgment of $4.5 million," but provides no indication of how this figure was calculated. Pl. Mem. at 11. Elsewhere in the brief, and consistent with the Proposed Order, Plaintiffs note that "[i]n total, the Plaintiffs invested $525,000 in the Defendants' real estate acquisitions." Id. at 8.

[11] Chesner's declaration appears to be simply a carbon copy of the factual allegations in the Complaint. It includes a number of statements made "upon information and belief" and statements that discuss the conduct of co-Plaintiff Stepner without any indication of how Chesner became aware of such conduct. The Court will credit only those

and it appearing that Chesner seeks damages arising from Levine's misappropriation of the $334,000 he contributed towards the purchase of real estate in Perth Amboy, see Chesner Decl. ¶¶ 30-32;

and it appearing that Chesner avers that he received certain payments from Defendants and concedes that "those amounts will be deducted from Plaintiff's ultimate award of damages," id. ¶ 43;

and it appearing that Plaintiffs have not provided the dollar amount Chesner received, rendering the Court unable to calculate a damages award;

and it appearing that Stepner seeks damages arising from Levine's failure to manage the Properties or make distributions, but Plaintiffs have not quantified the distributions owed under the Operating Agreements[12] or explained how Levine's failure to manage the Properties damaged Stepner;

and it appearing that Plaintiffs have therefore failed to satisfy their burden to prove damages;

**IT IS** on this 8th day of April, 2021

**ORDERED** that Plaintiffs' Motion for Default Judgment, ECF No. 15, is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiffs may filed a renewed motion for default judgment providing proof of damages within thirty (30) days of this Order.

---

statements that plausibly fall within Chesner's personal knowledge. Plaintiffs are instructed that any renewed motion for default judgment must be accompanied by declarations or other proof demonstrating the specific facts supporting each Plaintiff's individual claim to damages.

[12] The Complaint pleads only that Stepner invested a total of $298,500 and received a total of $122,740 in distributions. Compl. ¶¶ 15, 18, 20, 23, 25. Nowhere do Plaintiffs specify the distributions owed under the Operating Agreements, and Plaintiffs have not submitted the Operating Agreements themselves.

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**